UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JEFFREY RAY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Civil Action No. CV-01-HGD-0819-S |
| ) | |
| STATE OF ALABAMA, ) | |
| ) | |
| Respondent. ) | |

FILED
02 APR 22 PM 3: 55
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
APR 2 3 2002

### MEMORANDUM OPINION

This action is before the court on petitioner's objections (doc. no. 12) to the report and recommendation of the magistrate judge (doc. no. 11), which recommends a denial of the petition for writ of habeas corpus that petitioner filed pursuant to 28 U.S.C. § 2254 (doc. no. 1). Respondent filed an answer and evidentiary submissions in response, which the magistrate judge construed as a motion for summary judgment (doc. no. 8). Petitioner subsequently filed his own motion for summary judgment and evidentiary submissions (doc. no. 10). Upon consideration of petitioner's objections, the motions for summary judgment, evidentiary submissions, and the report of the magistrate judge, petitioner's objections are due to be overruled, and his motion for summary judgment is due to be denied. Further, respondent's motion for summary judgment is due to be granted, and the petition for writ of habeas corpus is due to be dismissed with prejudice.

Jeffrey Ray ("Ray") was identified in a one-man show-up as the person who committed the robbery of a small convenience store in Jefferson County, Alabama on September 19, 1998.[1] A clerk at the convenience store named Karen Hogueland ("Hogueland") identified Ray as the robber on the basis of having viewed Ray on the phone and in the store immediately prior to and during the

---

[1] *See* Report (doc. no. 11), at 1.

13

robbery. Ray has challenged the validity of his conviction for robbery of the convenience store in the first degree. Ray now contests the magistrate judge's recommendation to deny his petition for writ of habeas corpus, and disputes the magistrate judge's conclusion that the state trial court did not unreasonably apply federal law when it held that the one-man show-up identification of Ray was reliable under the "totality of the circumstances."[2] Ray objects specifically to the trial court's refusal to suppress the identification of Ray by Hogueland, because, he contends, Hogueland's pre-trial identification of Ray was unnecessarily suggestive and, thus, was constitutionally unreliable.[3]

Ray also asserts that the "Alabama rule," which is used by Alabama trial and appellate courts to determine whether there is sufficient evidence to sustain petitioner's conviction, does not comport with due process as provided for the Fifth Amendment to the United States Constitution, and applied to the states through the Fourteenth Amendment.[4] After a review of the relevant case law authority, the court concludes that Ray's argument to this effect is without merit. The court thus proceeds to consider Ray's remaining claim that Hogueland's pre-trial identification of him was unnecessarily suggestive and, thus, was constitutionally unreliable.

## I. DISCUSSION

The United States Supreme Court has long recognized that the practice of showing a suspect by himself to a witness for the purposes of identifying the perpetrator of a crime is widely condemned, because it is "unnecessarily suggestive" and "conducive to irreparable mistaken identification[]" of the suspect as the perpetrator of the crime. *Frazier v. State*, 729 So. 2d 253, 254

---

[2] Petitioner's Objections (doc. no. 12), at 1.

[3] *See id.* at 18.

[4] *See id.* at 19-20.

2

(Ala. 1998) (quoting *Manson v. Braithewaite*, 432 U.S. 98, 104, 97 S.Ct. 2243, 2248, 53 L.Ed.2d 140 (1977)); *see also Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The danger in these one-man show-ups is two-fold: first, that the witness gets a message from the police that "*this* is the criminal," and second, by virtue of the fact that the witness doesn't get the opportunity to choose another person as the perpetrator (as in a line-up). *See Frazier*, 729 So.2d at 255 (quoting *Williams v. State*, 546 So. 2d. 705, 706 (Ala. Crim. App. 1989); *Brazell v. State*, 369 So. 2d 25 (Ala. Crim. App. 1978)). As a result, when a one-man show-up is used to identify the perpetrator of a crime, and that identification provides the basis for an in-court witness identification, courts call into question the reliability of the pre-trial identification. *See Dunning v. State*, 659 So. 2d 995, 997 (Ala. Crim. App. 1994). If the trial court permitted the prosecution to use an unreliable identification to secure a conviction, then the perpetrator's due process rights have been violated. *See Frazier*, 729 So. 2d at 255.

Even if the method used to identify a perpetrator is unnecessarily suggestive — as here — without more, Ray's due process rights will not have been violated. Instead, in order to determine whether a pretrial show-up violates due process, courts must determine whether, under the totality of the circumstances, the identification was reliable even though the one-man show-up was suggestive. *See Johnson v. State*, 473 So. 2d 652, 657 (Ala. Crim. App. 1985) (citing cases to the effect that one-man show-ups are inherently suggestive because the "witness is given no other choice"). Courts assess the reliability of the identification based on five factors set out by the Supreme Court in *Neil v. Biggers*, 409 U.S.188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *see also Johnson*, 473 So. 2d at 656; *Phillips v. State*, 462 So. 2d 981, 988 (Ala. Crim. App. 1984) (quoting

3

*Manson*, 432 U.S. at 114, 97 S.Ct. at 2253; *Biggers*, 409 U.S. at 199-200, 93 S.Ct. at 382-83). These five factors include: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description; (4) the level of certainty demonstrated at the confrontation; and, (5) the time between the crime and the confrontation. *See id.* at 199-200, 93 S.Ct. at 382.

In this case, the fifth *Biggers* factor is not problematic, because only about an hour and a half elapsed between the crime and the one-man show-up. Case law from the both the federal and Alabama state courts evinces that this is a reasonable period of time. *See, e.g., Biggers*, 409 U.S. at 201, 93 S.Ct. at 383 (finding identification reliable although seven months had lapsed between show-up and the crime); *Phillips*, 462 So. 2d at 988 (finding identification reliable where show-up was conducted between thirty minutes and one hour after the crime); *Carter v. State*, 340 So. 2d 94, 98 (Ala. Crim. App. 1976) (finding two and one-half hours between the crime and show-up to be reasonable). The remaining four *Biggers* factors do call into question the reliability of the pre-trial identification, however.

Regarding the first *Biggers* factor, Hogueland testified that, while she was working in the store, she noticed an older model, dirty, blue station wagon parked outside the store.[5] Hogueland waited on some customers, and then noticed Ray talking on a pay phone about thirty-five feet away from the store.[6] Hogueland testified that Ray was on the phone for approximately twenty minutes.[7] What is troubling about Hogueland's opportunity to view Ray at the time of the crime is, first, that

---

[5] Answer, Ex. A (Trial Transcript), at 12.

[6] *See id.*

[7] *See id.* at 17.

4

she admitted that she could not tell much about his physical appearance while he was talking on the pay phone, other than that he had brown hair.[8] Hogueland got a better look at him once he got off the telephone, and as he crossed the parking lot to his blue station wagon. The first *good* look Hogueland got at Ray, however, was after he had pointed a gun in Hogueland's face during the robbery, at which point he was wearing a rag over his face, from the middle of his nose to his chin.[9] The placement of the rag meant that Hogueland was able only to see Ray's eyebrows, the feature on which she ultimately based her identification, because he also was obscuring his eyes.[10]

The second *Biggers* factor, namely the degree of attention the witness paid to Ray at the time of the crime, is further questionable. Hogueland was working as a clerk in the convenience store and was waiting on customers during the time Ray was outside the store on the phone. Hogueland stated that, while she got a better look at Ray after he got off the phone, she wasn't really paying any attention to his face.[11] Further, Hogueland did not see Ray enter the store because she had her back turned to him, so that she could straighten the cigarette rack behind the counter.[12] When Hogueland turned around to face Ray, he was pointing a shotgun at her, which caused her to become frightened; Hogueland testified that she was not concentrating on Ray's physical features as a result.[13] Hogueland also stated that she only looked at Ray for "one second."[14] Hogueland then emptied the

---

[8] *See id.* at 14, 18, 19.

[9] *See id.* at 20.

[10] *See id.*

[11] *See id.* at 18.

[12] *See id.* at 14, 19.

[13] *See id.* at 21.

[14] *Id.*

5

cash drawer of the register while Ray waited (testifying that she did not look down into the cash drawer), and then watched Ray walk to the blue station wagon parked outside the store.[15]

Further troubling is the third *Biggers* factor, or the accuracy of the witness's description of Ray. Hogueland based her identification of Ray essentially on the portion of his face not covered by a rag: from the bridge of his nose upwards.[16] It appears, however, that Hogueland did not, or could not, identify the severe acne scars on Ray's forehead, which apparently are close to Ray's eyebrows.[17] In addition, although she testified that she and the robber were about the same height, or approximately 5'6" or 5'7", Ray was measured for his height in the courtroom and is 5'11½" tall.[18] Further, Ray was wearing different clothes than the robber when he was arrested, and had a different hairstyle.[19] Finally, the description Hogueland gave police of Ray's car failed to include some significant distinguishing characteristics, such as the fact that the car had a rusted top, broken rear window glass, and rust and a broken part on the rear corner of the right side of the car.[20] When Hogueland testified at trial, she noted that the car she had seen at the time of the robbery did not appear to have rust stains or broken glass.[21] She also testified that she couldn't really see the car when it was parked at the station, or as it was driving away.[22]

---

[15] *See id.* at 15-16, 21.

[16] *See id.* at 20.

[17] *See id.* at 21.

[18] *See* Report (doc. no. 11), at 3.

[19] *See id.* at 4.

[20] *See* Answer, Ex. A (Trial Transcript),. at 39-40.

[21] *See id.*

[22] *See id.* at 42-43.

6

As to the fourth *Biggers* factor (the level of certainty demonstrated at the show-up), Hogueland testified that about one and a half to two hours after the robbery, the police brought Ray to the store for her to identify. It was dark outside when the police returned with Ray, such that Hogueland stated that she could not actually see police officers remove Ray from the police vehicle.[23] When Hogueland first saw Ray, she was unable to identify him because it was dark outside and she was still inside the store. She exited the store to get a better look at Ray, at which time she noticed that he was wearing different clothes from those the robber wore, and had a different hairstyle than did the robber.[24] She got within four feet of Ray, but was still unable to identify Ray as the robber.[25] As a result, she requested that the police hold a rag over Ray's face, as the robber had done. Hogueland testified that she asked police to cover his face so that she could "make sure" and "be extra sure" about Ray based on his eyebrows — the only part of his face that she stated she could recognize.[26] It was at that point that Hogueland identified Ray as the robber. What is problematic here is that the trial court, appellate court, and magistrate judge all interpreted Hogueland's request to the police to cover Ray's face as indicative of the veracity of Hogueland's identification, as if she had taken extra special care to make sure that Ray was the perpetrator. Another appropriate reading of Hogueland's testimony, however, is that the only way Hogueland *could* identify Ray was by his eyebrows: it is not as if Hogueland identified him by his face, and then had the police use a rag to cover Ray's face so she could be "extra sure." Instead, Hogueland's

---

[23] *See id.* at 29.

[24] *See id.*

[25] *See id.* at 29.

[26] *Id.* at 29, 38.

7

testimony is that she could not identify Ray on the basis of his face and other physical features from four feet away, but rather could only do so on the basis of his eyebrows.[27]

It is important to note that this court's review of Ray's objections is *extremely limited* due to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d) (1996). AEDPA restricts this court's review to considering whether the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* Based on the facts described above, and assessing the totality of the circumstances, Hogueland's identification of Ray during the one-man show-up seems somewhat unreliable. Given the emphasis the Supreme Court places on eliminating the high risk of witness misidentifications stemming from one-man show-ups, reliability is the key to this court's analysis. *See Manson*, 432 U.S. at 114, 97 S.Ct. at 2253. It is not clear, however, that the trial court's determination was *unreasonable*, under the provisions of AEDPA.

Moreover, when assessing reliability, Alabama courts will look also (in addition to the *Biggers* factors) to the strength of other evidence in the case to determine whether the identification of the perpetrator was reliable. *See, e.g., Cartee v. State*, 390 So. 2d 1121, 1123 (Ala. Crim. App. 1980). Other "clear and convincing evidence that the identification stems from a source independent of" the pre-trial identification can form the basis of the court's conclusion that a due process rights claim based on the unreliability of a one-man show-up is without merit. *Frazier*, 729 So. 2d at 259 (citing *Cargill v. State*, 342 So. 2d 520 (Ala. Crim. App. 1983)). It is thus significant, then, that

---

[27] *See id.* at 39.

Hogueland later selected Ray's car as the one used by the robber from a spreadsheet of photos the police showed her.[28] Other evidence supporting the reliability of Hogueland's identification includes the stipulation by Ray during the trial to the testimony of a witness named Buck Buchanan. Buchanan testified that, on the morning of the robbery, Ray called Buchanan to borrow money.[29] Buchanan stated that he did not have money to lend Ray. Within an hour, Ray appeared at Buchanan's residence to inquire about purchasing Buchanan's car. Ray was driving an old blue Ford station wagon, and told Buchanan that, while he did not have the money to purchase Buchanan's car at that time, Ray would come back later in the day with the money to do so. In addition, Ray stipulated to the testimony that Ray's father accompanied a Robert Droxler to a pond the night after the robbery so that Droxler could throw a shotgun into the pond.[30] When police recovered the shotgun, Hogueland identified it as the same one used in the robbery. This evidence, when considered alongside the restricted review provisions of AEDPA, suggests that Hogueland's identification of Ray is constitutionally reliable.

For the foregoing reasons, Ray's motion for summary judgment is due to be denied. Further, respondent's motion for summary judgment is due to be granted, and the petition for a writ of habeas corpus is due to be dismissed with prejudice. An order consistent with this memorandum opinion shall be issued contemporaneously herewith.

DONE this 22nd day of April, 2002.

United States District Judge

---

[28] *See id.* at 31.

[29] *See* Report (doc. no. 11), at 7.

[30] *See id.*